IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

MELVIN W. KAHLE, JR. and
CAROL KAHLE,

    Plaintiffs,

v.                                     Civil Action No. 5:11CV24
                                                      (STAMP)
CHESAPEAKE ENERGY CORPORATION,
CHESAPEAKE APPALACHIA, LLC,
KEVIN SWIGER and
STATOIL USA ONSHORE PROPERTIES, INC.,

    Defendants.

**MEMORANDUM OPINION AND ORDER
DENYING PLAINTIFFS' MOTION FOR REMAND AND LIFTING STAY**

I.   Procedural History

The plaintiffs, Melvin W. Kahle, Jr.. and Carol Kahle, filed this declaratory judgment action in the Circuit Court of Ohio County, West Virginia on January 14, 2011. The plaintiffs seek a declaratory judgment that the defendants do not have the right to enter or drill upon their property and that both the May 15, 2006 oil and gas Lease signed by the Kahles and Range Resources-Appalachia, LLC ("Lease") and the alleged assignment of the Lease to Chesapeake Appalachia, LLC ("Chesapeake") and Statoil USA Onshore Properties, Inc. ("Statoil") be declared null and void. The complaint includes a stipulation by the plaintiffs regarding the amount in controversy. Specifically, the plaintiffs acknowledge that they will neither seek nor accept damages in this matter in excess of $75,000.00, excluding any award that may be

made for attorney fees.  Despite this stipulation, the defendants removed the case to this Court on February 14, 2011.

On February 22, 2011, defendants Chesapeake Energy Corporation ("Chesapeake Energy") and Kevin Swiger filed a motion to dismiss the complaint.  In support of this motion, the defendants argue that neither Mr. Swiger nor Chesapeake Energy are parties to the Lease and there are no claims asserted against them in the complaint.  Before the motion to dismiss was fully briefed, the plaintiffs filed a motion for a stay of briefing pending a decision on their motion for remand, which had not yet been filed.  On March 10, 2011, the plaintiffs filed their motion for remand. Subsequently, the defendants filed a response to the motion for a stay of briefing, as well as a response to the motion for remand. The plaintiffs then filed timely replies to both of these responses.

This Court issued an order on March 30, 2011 granting the plaintiffs' motion for a stay pending a decision on the motion for remand.  Accordingly, all briefing deadlines and proceedings in this case are currently stayed.  The motion for remand is pending before this Court and is ripe for disposition.  Having reviewed the parties' pleadings and the relevant law, this Court finds that the plaintiffs' motion for remand must be denied.

## II. Facts[1]

On May 15, 2006, the plaintiffs entered into the Lease with Great Lakes Energy Partners, LLC ("Great Lakes"), a wholly owned subsidiary of Range Resources Corporation that later changed its name to Range Resources-Appalachia, LLC ("Range"). The Lease does not grant Range the authority to sell or assign it. The plaintiffs allege that Range orally agreed to terminate/surrender the Lease, and then on August 20, 2010, Range confirmed the termination of the Lease in writing via a letter to the Kahles. After the plaintiffs received the letter from Range, Chesapeake and/or Chesapeake Energy informed them that it had acquired the Lease. On October 18, 2010, the defendants[2] issued a notice of entry that they would be entering the plaintiffs' land. Kevin Swiger, Chesapeake Energy's senior field representative, allegedly physically entered the plaintiffs' land despite being told that the Lease had been terminated.[3] The plaintiffs also learned that Chesapeake had applied for a permit to drill on the plaintiffs' property beginning in December 2010. According to the plaintiffs, Chesapeake Appalachia, Chesapeake Energy, and Statoil could not have acquired

---

[1] For the purposes of this opinion, this Court adopts, for the most part, the facts as set forth by the plaintiffs in their complaint.

[2] The complaint does not specify which defendants issued the notice of entry.

[3] This fact does not appear in the complaint, but is stated in the plaintiffs' motion for remand.

3

an existing Lease from Range because Range had terminated the Lease with the Kahles as of August 20, 2010.

### III. Applicable Law

A defendant may remove a case from state court to federal court in instances where the federal court is able to exercise original jurisdiction over the matter. 28 U.S.C. § 1441. Federal courts have original jurisdiction over primarily two types of cases: (1) those involving federal questions under 28 U.S.C. § 1331, and (2) those involving citizens of different states where the amount in controversy exceeds $75,000.00, exclusive of interests and costs pursuant to 28 U.S.C. § 1332(a). The party seeking removal bears the burden of establishing federal jurisdiction. See Mulcahey v. Columbia Organic Chems. Co., Inc., 29 F.3d 148, 151 (4th Cir. 1994). Removal jurisdiction is strictly construed, and if federal jurisdiction is doubtful, the federal court must remand. Id.

The doctrine of fraudulent joinder creates an exception to the requirement of complete diversity. See Mayes v. Rapoport, 198 F.3d 457, 461 (4th Cir. 1999). Under this doctrine, removal is permitted even if a non-diverse party has been named as a defendant at the time the case is removed if the non-diverse defendant has been fraudulently joined. Id. "This doctrine effectively permits a district court to disregard, for jurisdictional purposes, the citizenship of certain nondiverse defendants, assume jurisdiction over a case, dismiss the nondiverse defendants, and thereby retain

jurisdiction." Id. When fraudulent joinder is alleged, a court is permitted to examine the entire record by any means available in order to determine the propriety of such joinder. See Rinehart v. Consolidation Coal Co., 660 F. Supp. 1140, 1141 (N.D. W. Va. 1987).

IV.  Discussion

In support of their motion to remand, the plaintiffs argue: (1) the amount in controversy does not exceed $75,000.00; and (2) diversity of citizenship does not exist. In response, the defendants contend that they have satisfied their burden regarding the amount in controversy requirement and have shown that Kevin Swiger is fraudulently joined in this action. This Court addresses each of these issues in turn.

A.  Amount in Controversy

The burden of establishing that the amount in controversy exceeds $75,000.00, exclusive of interests and costs, rests with the party seeking removal. Mulcahey, 29 F.3d at 151. This Court has consistently applied the "preponderance of evidence" standard to determine whether a defendant has met its burden of proving the amount in controversy. When no specific amount of damages is set forth in the complaint, the defendant bears the burden of proving that the claim meets the requisite jurisdictional amount. Mullins v. Harry's Mobile Homes, Inc., 861 F. Supp. 22, 23 (S.D. W. Va. 1994). In such circumstances, the Court may consider the entire record before it and may conduct its own independent inquiry to

determine whether the amount in controversy satisfies the jurisdictional minimum. Id.

In this case, the plaintiffs' complaint does not set forth a total monetary sum requested. But the plaintiffs do stipulate that they will neither seek nor accept damages in excess of $75,000.00. (Compl. 4.) The plaintiffs argue that the amount in controversy cannot be satisfied because of this stipulation. The defendants, however, respond that the stipulation is irrelevant in a declaratory judgment action because in such an action, the amount in controversy is judged by the value of the object of the declaratory relief that is sought. The defendants argue that the object of this action -- the value of the Lease -- is worth more than the jurisdictional amount. This Court agrees.

"'In actions seeking declaratory or injunctive relief, it is well established that the amount in controversy is measured by the value of the object of the litigation.'" McCoy v. Erie Ins. Co., 147 F. Supp. 2d 481, 492 (S.D. W. Va. 2001) (quoting Hunt v. Washington State Apple Adver. Comm'n, 432 U.S. 333, 347 (1977)). In assessing the value of the object of the litigation, the United States Court of Appeals for the Fourth Circuit looks at the pecuniary result to either party which a judgment would produce. Dixon v. Edwards, 290 F.3d 699, 710 (4th Cir. 2002) ("[T]he test for determining the amount in controversy in a diversity proceeding is 'the pecuniary result to either party which [a] judgment would

produce.'") (quoting Gov't Emp. Ins. Co. v. Lally, 327 F.2d 568, 569 (4th Cir. 1964)).

The plaintiffs submit that the value of the Lease, from their viewpoint, is less than $75,000.00 because no oil, gas, coalbed methane, or other liquid hydrocarbons are currently being produced on their land. Further, the plaintiffs claim that it is likely that the Lease will expire according to its terms before this litigation is over, leaving it with little remaining value. The plaintiffs also challenge the defendants' assertion that the value of the Lease exceeds $400,000.00. Rather than consider the cost to the defendants to obtain a similar Lease on the open market, the plaintiffs submit that the Court should consider the cost of the Lease when it was negotiated in May 2006. Using this value, the plaintiffs then calculate the approximate amount of loss, per month, that the defendants would potentially suffer as a result of delay.[4]

The plaintiffs challenge the defendants' proof of the value of the Lease, but they offer no affidavit in support of their own valuation of the Lease. The defendants, on the other hand, submitted the affidavit of Brian C. Lohoff as part of their notice of removal, which states that the value of the Lease to the defendants exceeds $75,000.00, based upon the cost to the defendants to secure the same property rights if a declaratory

---

[4]The plaintiffs calculate the defendants' loss for a three-month delay (assuming they have the assigned Lease) to be $596.50. (Mot. for Remand 6.)

judgment was entered that voided the Lease. (Lohoff Aff. ¶ 11.) By determining the replacement cost, Mr. Lohoff is able to calculate the pecuniary result if the sought-after declaratory judgment is entered. The Kahles provide no affirmative evidence that the value of the Lease is less than $75,000.00, nor do they challenge Mr. Lohoff's affidavit.

Instead, the plaintiffs present several arguments as to why the Lease should be valued below the $75,000.00 threshold. First, they argue that the value of the Lease is zero because it was terminated. But this argument improperly assumes that the plaintiffs will prevail in this action. Second, the Kahles argue that if the defendants prevail, they will have suffered no harm and therefore, the amount in controversy threshold is not established. But the affidavit of Mr. Lohoff, which states that a declaratory judgment that the Lease is void would have a pecuniary result in excess of $75,000.00, refutes this assertion. Third, the plaintiffs contend that the Lease has a value of less than $75,000.00 because the primary term of the Lease is close to expiring. Even if the Lease term does expire, the defendants note that the Lease also provides that it shall continue beyond the end of the primary term for so long as gas is produced or if the lessee "is engaged in a bona fide attempt to secure or restore the production of oil, gas and/or coalbed methane gas or other liquid hydrocarbons by conducting drilling . . . operations." (Lease ¶ 1.1.) As the plaintiffs confirmed in their complaint, Chesapeake

Appalachia has applied for a permit to drill a well, and this permit has since been granted. But for the Kahles' refusal to allow Chesapeake Appalachia onto the property, drilling operations may have already commenced within the primary term, thus securing the Lease beyond that term.

Because a judgment declaring that the plaintiffs' Lease is void, measured from the viewpoint of the defendants, would have a pecuniary result exceeding $75,000.00, the plaintiffs' stipulation as to damages does not impact the amount in controversy inquiry. See McCoy, 147 F. Supp. 2d at 493-94 (refusing to credit a stipulation as to damages where declaratory and injunctive relief was sought). Moreover, the plaintiffs' arguments minimizing the value of the Lease do not change the fact that based upon the affidavit submitted by the defendants, the cost of complying with the sought-after declaratory relief would exceed $75,000.00. Accordingly, this Court finds that the Kahles' stipulation must be disregarded and that the defendants have met their burden of proving that the amount in controversy exceeds $75,000.00.

B. Fraudulent Joinder

To establish fraudulent joinder, "the removing party must demonstrate either 'outright fraud in the plaintiff's pleading of jurisdictional facts' or that 'there is no possibility that the plaintiff would be able to establish a cause of action against the in-state defendant in state court.'" Hartley v. CSX Transp., Inc., 187 F.3d 422, 424 (4th Cir. 1999) (quoting Marshall v. Manville

Sales Corp., 6 F.3d 229, 232 (4th Cir. 1993)).  A claim of fraudulent joinder places a heavy burden on the defendants. Marshall, 6 F.3d at 232.  "[T]he defendant must show that the plaintiff cannot establish a claim against the nondiverse defendant even after resolving all issues of fact and law in the plaintiff's favor.  A claim need not ultimately succeed to defeat removal; only a possibility of right to relief need be asserted."  Id. at 232-33 (internal citations omitted).  Further, the burden is on the defendants to establish fraudulent joinder by clear and convincing evidence.  See Rinehart, 660 F. Supp. at 1141.

Here, the defendants do not allege outright fraud in the plaintiff's pleadings.  Instead, the defendants argue that the plaintiffs simply do not assert a claim against Mr. Swiger. Therefore, to defeat the plaintiffs' motion to remand, the defendants must establish by clear and convincing evidence that, even resolving all issues of fact and law in the plaintiffs' favor, the plaintiffs have not alleged any possible claim against Swiger. The defendants have met this burden.

In support of their motion for remand, the plaintiffs contend that because Kevin Swiger, a resident of West Virginia, is a non-diverse defendant, the case cannot be removed to this Court on diversity of citizenship grounds. According to the plaintiffs, Mr. Swiger wrongfully issued a notice of entry and committed trespass, asserting non-existent property rights.  However, the plaintiffs themselves acknowledge that their complaint does not "specifically

enumerate a cause of action against Mr. Swiger for trespass or negligence." (Mot. for Remand 8.)

In their response, the defendants highlight the fact that the only allegations in the complaint regarding Mr. Swiger are that he is a senior field representative for Chesapeake Energy and a resident of West Virginia. As there are no claims asserted against Mr. Swiger and no relief sought from him, the defendants conclude that Mr. Swiger was fraudulently joined in this action in order to destroy diversity. Although the plaintiffs argue that their complaint can be construed as stating a claim for trespass or negligence against Mr. Swiger, the defendants counter that the allegations of the complaint do not relate to Mr. Swiger at all. Further, the plaintiffs' contention in their motion for remand that Mr. Swiger actually entered the property cannot be considered for purposes of determining the propriety of removal. See Justice v. Branch Banking and Trust Co., No. 2:08-230, 2009 WL 853993 (S.D. W. Va. Mar. 24, 2009) (reviewing a fraudulent joinder claim and stating that "[p]ost-removal filings may not be considered, however, when or to the extent that they present new causes of action or theories not raised in the controlling petition filed in state court.") (quoting Griggs v. State Farm Lloyds, 181 F.3d 694, 700 (5th Cir. 1999)); see also Adkins v. Wells Fargo Bank, N.A., No. 5:09-cv-01333, 2010 WL 1780255 (S.D. W. Va. May 3, 2010) ("Although the court may consider the entirety of the record at the time of removal, the starting point of its analysis must be the

allegations of the Complaint, itself.") (quoting White v. Chase Bank USA, NA, No. 2:08-1370, 2009 WL 2762060, at *2 (S.D. W. Va. Aug. 26, 2009)).

This Court concludes that the defendants have met their burden of proving fraudulent joinder.  Therefore, the citizenship of Mr. Swiger should be disregarded and the motion for remand must be denied.

## V. Conclusion

For the reasons stated above, the plaintiffs' motion for remand is DENIED.  Pursuant to this Court's order of March 30, 2011, the stay of discovery pending a decision on the motion for remand is hereby LIFTED.

IT IS SO ORDERED.

The Clerk is directed to transmit a copy of this order to counsel of record herein.

DATED:    June 3, 2011

/s/ Frederick P. Stamp, Jr.
FREDERICK P. STAMP, JR.
UNITED STATES DISTRICT JUDGE